Good morning, your honors. Ben Coleman. I represent the appellant Ethan Jinian. I'd like to start off with the first issue in our briefs, and that is that all counts should be reversed and judgements and acquittals should be entered under the Supreme Court's decision in Conn. And I want to talk about the specific cases because I think the government has, in their efforts to try to get this case around Conn, cited cases that really aren't on point. But I want to Conn does allow for exceptions, does it not? It does. All right, and why isn't this one of them? Because this case is virtually indistinguishable from Conn. This is a high-level executive, just like the defendant in Conn, who allegedly received bonuses and salaries that he wasn't entitled to, just like in Conn. He was charged in multiple counts, just like in Conn, with of time, just like in Conn. And the only thing that the government attempted to rely on to establish the interstate element were the interbank transmissions. It's the exact same case. There's no difference. It's a Supreme Court case, which this court is bound to follow. And frankly, the most recent U.S. Supreme Court cases are making it clear that the court should not be interpreting interstate commerce elements in this expansive manner that the government would like. But didn't the Supreme Court expressly recognize that the mere clearing of a check in some settings would be enough, this was in Conn, to support a mail fraud or here a wire fraud? Why isn't this one of those settings? Well, again, it found that in Conn, though, it didn't apply. And this case is exactly like Conn. And I'll give you some examples of where it might apply. And these are the cases the government relies upon. And I'll demonstrate why it doesn't apply in this case. Okay, both the government and the district court relied on Seventh Circuit precedent. Two cases, one named Powell and one named Franks. And I want to discuss both of those. And those are cases where, yes, the interbank transmissions can establish jurisdiction, but they're clearly different than this case in Conn. What happened in Powell was that the defendant was a corrupt attorney, and he had an 85-year-old aunt who was in charge of a historical society. And what the attorney did is he arranged for the $200,000. He arranges the sale. It's made out to the historical, the check is made out to the historical society. He gets the check. And what does he do? He forges his aunt's name on the check, presents it to the bank, gets paid $200,000. That's where the wire then comes in. There's a payment to his trust account for $200,000. And then he keeps a large portion of the money and That is a check forgery case. It is a bank fraud case because what is happening is that the defendant is defrauding the bank. He is forging a signature on the check. And in that instance, the interbank transmissions are part of an essential part of the fraudulent scheme. He needs to defraud the bank to get them to believe that this check is supposed to go to his trust account, not to the rightful person, which is the historical society. It's the same thing in Franks. Franks is a case where the defendant was a bookkeeper for a medical clinic. She would take the checks that were made out to the medical clinic, forge the endorsement, and deposit them into her personal account as if they were for her. So what is she doing? She's defrauding the bank. She is taking checks that were made out to another entity, and she is saying, oh, these are my checks. I'm going to forge the endorsement and deposit them into my bank. Once again, that is part of the essential part of the fraudulent scheme there is to defraud the bank. Well, there was a fraudulent scheme here. I mean, the forgery is a little different, and I think that's what you're arguing is that the forgery distinguishes this case from those. But there was a fraudulent scheme here. And there was a fraudulent scheme in Kahn. The jury found that the defendant had defrauded the high-level executive in that case. The question is, and we obviously contested at trial that there was a fraud, but we're assuming right now that there is a fraud. Yes. Let me go on. In Kahn, it talks about a complete scheme, or if it's done in an effort to complete a scheme. And wasn't the scheme here, because Mr. Ginian was having the bookkeeper, the accountant, one of the higher-ups write checks to him. The board didn't know that was happening, and he got more than $1.5 million, correct? Correct. Approximately. But he didn't just say to him, write me one check for $1.5 million, did he? No. These were multiple checks. Multiple checks, lower-level checks. I mean, lower-amount checks, correct? Correct. And that seems like an interesting fact, that he was doing lower-level checks. And it's smaller denominations than the $1.5, and each deposit was in furtherance of his goal of getting a larger amount. Is that not? Exact same thing in Kahn. There were multiple checks in Kahn. And if I can just, this is the Supreme Court rejected this precise argument in Kahn. And this is the second to last paragraph in Kahn. The government argues that the scheme was not complete, and that the defendants expected to receive further bonuses and profits, and that the clearing of these checks in the ordinary course was essential to its further prosecution. But even in that view, the scheme was completely executed as respects the transactions in question, when the defendant received the money intended to be obtained by their fraud, and the subsequent banking transactions between the banks concerned were merely incidental and collateral to the scheme and not a part of it. How many checks in Kahn? Three. And how many checks here? There were 14 counts. 14. Okay. And the Supreme Court, since Kahn... Excuse me, but there were evidence that there were up to 100. Was that evidence? 14 counts and up to 100 checks that were not, 100 other counts that could have been charged that weren't. Well, I don't know exactly how many other counts. He was, the government did claim at sentencing that there was other money that he was paid that he shouldn't have gotten. Well, yeah, because the amount of money here was like $200,000, wasn't it? But the overall amount of money that he was getting through this checks was over a million dollars, isn't that? That was their ultimate claim that, I don't know if they were, I guess they were all checks, but some of it was travel expenses that they said he wasn't entitled to and things like that. And they folded all that in. So it's not necessarily, this is a 14 count indictment. Kahn was a three count indictment, but it's multiple counts, each with respect to each check. And I would like to go back to, again, what the Supreme Court is saying in his most recent cases, Jones and Cleveland, which are cases that we cited, which is that these, under the rule of lenity and the doctrine of constitutional doubt, these interstate commerce elements should be, should not be interpreted expansively. That the role for common law crimes in our federal system, the states are the ones who are generally the courts that prosecute those crimes. And that's where these cases belong. And we shouldn't be trying to twist and turn these interstate commerce elements in this expansive manner to allow an expansive view of federal jurisdiction. And frankly, under the government's theory, every case where a check is deposited, because these checks get cleared at a server in Dallas, is going to wind up granting federal jurisdiction to not only prosecute, but also federal civil jurisdiction, because fraud, mail fraud, wire fraud is a RICO predicate. All right, but the floodgates argument that you're making was considered the Schmuck case. And they said, well, there's an ongoing scheme that would differentiate this from the every single case that you were saying could come under this rule. What do you do with the Schmuck case? Okay. Schmuck, again, Schmuck is not an interbank collection case. Schmuck is a case where the defendant was fraudulently selling used cars. He was rolling back the odometers on used cars, and then presenting them as if they had 50,000 miles when really they had 100,000 miles on them. The mailings that were alleged as the jurisdictional hook in that case were the titles to the cars that were mailed to the owners, the people who bought the car. Now, what the Supreme Court said is, in order for the owner of the car to actually purchase the car and have legitimate, believe that he has a legitimate vehicle, he needs to receive the title to the vehicle. And this lulls the owners of the car, who once they receive the titles, they think we're now an owner of a legit vehicle, and the scheme can go on because all the owners are satisfied that they're getting an appropriate vehicle. And if the titles have stopped being mailed, then the scheme couldn't go on because they couldn't continue to sell the cars. Nobody would buy a car if they're not going to get a title to the vehicle. So it's not an interbank collection case. It's a case that involves the transfer of title in the course of a sale. And in that case, when the title is mailed or wired or whatever it may be in interstate commerce, then the Supreme Court held that is incident to an essential part of the scheme. But in Kahn, what this court has said is that interbank transfers are not an essential part of the scheme. They're not incidental to an essential part of the scheme. If the bank was suspicious and had turned down one of these lower-level checks to avoid brisbane, could that have interfered with the scheme? Excellent question. No, not at all. The government has tried to come up with different theories now as to how supposedly the scheme could have been interrupted. None of them were either and I'll try to explain. The government presented no evidence whatsoever that if there was some problem in the bank transfer process that the individual you had been referring to, your honor, that was writing the checks, that he would have done anything else other than continue to write him a check. They would have just said, oh, there was some problem. I'll write you another check. There was nothing presented at trial whatsoever that indicated that the clearing of the checks was essential to this scheme continuing on. The government has now claimed for the first time on appeal, they didn't argue that it wasn't alleged in the indictment. They didn't present evidence at trial. They didn't argue it at trial. They didn't even argue it in the post-trial motions. Their theory now is that if the clearing process didn't, if there was a problem, Mr. Ginian's bank might have become upset with him that the check didn't go through and they might have, I guess, you know, told him he couldn't be a customer anymore. Well, I have never heard of a bank when if you deposit a check and it doesn't clear, they would blame you or tell you that you can't be a customer anymore. And even if that did happen, there was no reason why Mr. Ginian couldn't have just opened up another bank account and deposited the checks into another bank. The clearing process had absolutely nothing to do with the fraud in this case, which is what Kahn held. And it's a controlling Supreme Court case. And there may be frustration by the government and perhaps even some courts that, well, we think we have a fraud here. And therefore, we should find a way to convict. But haven't other circuits disagreed with you? I mean, it seems like there's other circuits who have not applied Kahn in this pretty similar circumstance. They're not. The Seventh Circuit, I went through those cases. Those were checks forgery cases and where the bank was being defrauded. The government also cited Mills, the Fifth Circuit case. In Mills, again, it was a bank fraud case. The bank was alleged as a victim of the fraud in that case. It wasn't a sufficiency case. It was just a challenge to the indictment. But the bank was alleged as the victim. The banks weren't victims in this case. Nobody could go after a bank in this case. These were checks that, just like in Kahn, that were written out to the defendant. The company may not have liked the fact that they didn't think that Mr. Ginni was entitled to the checks, but they couldn't blame the bank if later that somehow the bank was erroneously cleared the checks. In these other cases, when in a check forgery case, the bank becomes the victim because now they're on the hook for depositing a deposit. And that's the essential difference in the case. There is no other circuit that is held under these facts that Kahn does not apply. In Kahn, Kahn did mention it was a means of concealment so that further frauds, which are part of the scheme, may be perpetrated. Didn't the use of these multiple small amount checks, you say 14, but the sentencing came up with 100, um, wasn't that a means of concealing the fraud? I don't, I don't believe so. He wasn't concealing anything. These were checks. He would tell the person writing the checks, I'm due this money. He wasn't concealing it from that individual, but if the board had found out that he was getting those checks, you think that would have been okay? I mean, that's the whole reason there's a fraud charge here. Well, these checks were not, I mean, these aren't like $100 checks. These are checks for $10,000. But that's a, it was over 1.5, it was $1.5 million, I believe, approximately that he gained from his transactions or slash scheme. Correct? Well, again, they weren't all checks, but they claimed ultimately there weren't business expenses. He was due and he improperly billed certain things. Well, I think at sentencing, maybe you can look at the record and tell us if we're wrong. There was a reference to a hundred checks. Apparently the government didn't charge a hundred counts, but came up with 14. Um, so maybe when you come back up, you can tell us if we're incorrect on that. Okay. Okay. I'll give you two minutes for rebuttal. Okay. May it please the court. Suzanne Miles for the United States. Your Honor, I'll address right off the bat the question that you just asked. And the answer is that ER, uh, or SCR, excuse me, 445 through 539, you actually have copies of all 95 checks that were involved in this ongoing scheme. And you're correct. What makes this case, the total amount then was the total amount was just about $1.5 million. If you total up those 95 checks and that occurred, those checks were issued over the course of about a year and a half. This case is different from con because of that very reason. This was an ongoing scheme that lasts over the course, about a year and a half to two years involving 95 checks, which defendant deposited in his same bank, this, the one individual bank over and over and over again. This case is like schmuck because of the ongoing nature of the scheme. And what schmuck tells us is that in an ongoing fraud case, we look not only to each individual discrete transaction that makes up the overt acts of the fraud, but we also look to the conduct that bridges between the transactions. And in schmuck, that was particularly the case. There, the defendant was selling these used cars to dealers. The dealers were paying the defendant for the used car. So when he sold car number one to the dealer, he was paid for car number one. And the transfer of title, the mailing didn't happen until the dealer then sold that car to a buyer. But what the Supreme Court looked at was what brought the dealer back to buy car number two. And it was that ongoing element of the scheme, what bridged over at act number one to over at act number two and so on, what brought the dealer back to the table to continue to deal with the defendant as a legitimate seller of these used cars. And that's exactly what we have here. Here, what the focus is, is that these defendants, 95 checks, check after check after check. But why did you charge only 14? And this is one of the problems I have is this case appears to be more like con than like schmuck. Con, two transactions were not enough. You only charge 14 here. Why are 14 sufficient for an ongoing scheme? Let me unpack that question a little bit because I want to make a distinction in con that's two checks dealt with two discreet frauds. They weren't two over at acts of one overarching fraud. And that's an important point here. In con, there were two checks that were really at issue. One with regard to a builder that was contracted to build a factory for the shell company. And that builder paid money to the defendants. They cashed that check and they moved on. The second check had to do with bonuses and salaries that the defendants were basically siphoning through the shell company. And in that instance, even though the court said that the defendants set up the shell company to continue to do bonus checks and payment checks, there was only one overt act that was proven under that scheme to defraud. And because there was only one check, one overt act, it was a single discreet item. There was no ongoing offense. That's the distinction that the Supreme Court drew in schmuck. And that is the reason that even if we had charged only two checks here, we still would be different than con and we would be like schmuck. But in schmuck, the relationship, I mean, the relationship with the bank was a big basis for the court to decide the case. I think there was evidence of the business relationship with the retail car dealers and the bank and how it would relationship and his reputation. I'm just trying to find out where here is there evidence that Mr. Ginnian's business relationship with his bank would similarly be impacted to the degree explained in schmuck because that does seem distinct. There's two answers to that question. First, Your Honor, to turn you to the record, it's the Ng testimony, which is at ER 58 through 79, in which Mr. Ng, who was a Federal Reserve employee, described that the wire communications were essential for the clearing of these checks. And from that, the district court, in its order, and that's at ER 7, noted that the defendant did need to continue going back to this bank, or at least going back to the same bank was a part of his scheme. But to answer the second part... But let me just interrupt there. But opposing counsel said, so what? He can go to another bank. He could have, Your Honor, but he didn't. Instead, what he did was go back to the same bank. So just like in schmuck, where the defendant kept going back to the same auto dealers, and the court said that the fact that these were innocent, but repeat players, made them crucial to his scheme, made them an important part of the scheme. Now, keep in mind that the wire fraud statute doesn't require that the wire communications be an essential part. They simply need to be a step in the plot. They can be incidental to the scheme. But there, the Supreme Court held that the And that leads me to, I want to answer kind of the second part that's teed up by your question, Judge Merguia, which is the relationship, the harmonious relationship, and whether there was evidence in schmuck that proved that harmonious relationship. There wasn't. If you look at schmuck at page 712, what the Supreme Court said there was a rational jury could have found that the harmonious relationship was essential. And that's the standard of review that you have here as well. The question is whether any rational trier of fact could have found the essential elements of this claim. And in light of the Ng testimony, which is at the ER sites that I gave you, a rational trier of fact could have found that it was essential to the scheme for the defendant to continue having this bank accept him as a legitimate customer. And the only way that it did that was because it went through the clearing process that Mr. Ng described and had these checks cleared 95 different times. So that is why, because of the ongoing nature of this There was a 15-year relationship that seemed to directly affect the success or failure in schmuck based on his relationships, again, with the car dealers and the bank. And I'm not sure that that's the same kind of relationship that Mr. Ginian had. Are you saying does it matter? I'm saying that in some part it doesn't matter. Certainly the 15 years doesn't matter. What does matter is the fact that the bank was an innocent but repeat player in this scheme just as the car dealers were. And I think what you'll notice in schmuck, you're right that Mr. Schmuck did have an ongoing relationship with some of the dealers. But what the Supreme Court noted in the schmuck case is that it was only some of the dealers. It wasn't all of the dealers. And yet they affirmed all of the counts of conviction. And so I don't think that was a crucial element to their holding there. The ongoing nature of the relationship was crucial and is what makes it different than the Kahn case. This case is exactly what Kahn left open, which is that the check clearing process, I understand that the defense counsel makes much of the fact that this is a true. Kahn did note that check clearing can be enough in certain circumstances. And the 7th and the 5th circuit in Franks and in Mills have said that this type of case where you do have an ongoing relationship with particular banks in which the defendant continues to clear checks at these particular banks is what makes the case the exception in Kahn and puts it into schmuck. But what's your response to opposing counsel who highlighted the difference in those cases where there was actual forgery fraud, a forgery type of fraud in those cases? There were forgeries in those cases but it's not true what defense counsel says that the banks were the victims in those cases. That's not true. In Mills it was actually an embezzlement case. And the defendant was the controller of the company that he worked for and he was embezzling funds from the company. There's nothing in that case to indicate that the bank was the victim there. Instead the bank, while they were certainly passing forged checks through that bank, the bank was not on the hook for the loss. And the same thing really is the case here. Ginian's checks were frauds. He was defrauding the bank as well by presenting these checks under the claim that they were legally his property. They were not. These funds were not legally his. This case is no different than what happened in Mills and it's no different than what happened in Frank. In neither of those cases were banks the victims. Instead the companies that the defendants were working for or working on behalf of were the victims in those cases. There's no distinction. And that's exactly what the 7th and the 5th Circuit held when they held that Schmuck controls. And so just like those cases, Schmuck controls here. And for that reason, these counts of conviction, these convictions should be not contrary to Kahn, what occurred here. It's not contrary to Kahn, Your Honor? We can reconcile this under Kahn. Absolutely. This is exactly the reconciliation that the Supreme Court made between Kahn and Schmuck. It is the distinction that is underlying Schmuck and that's why Schmuck controls. Kahn simply doesn't control here because of the ongoing nature of the fraud. That's not quite the question. If we say Kahn does control, I thought you answered that we still could reach the conclusion you wish by applying Kahn because this is one of the things permitted by Kahn. Isn't that what you were saying? Not exactly, Your Honor. I think what Kahn did was leave open a case in which the clearing of checks, that mailing or that wiring can be enough to meet the requirements of the wire fraud statute. That was my question, yes. So there are cases in which that can be enough. The fact scenario in Kahn, the Supreme Court held that it wasn't enough. But where you have an ongoing offense, it is enough. And so that is why Schmuck and Kahn are reconcilable with one another. But that's also the reason that Schmuck is what controls here and not Kahn. Is that answering the question? Yes. I'm sorry, I think I misunderstood it. Defense counsel did not address any of the other issues that were raised in the briefing. I would be happy to address any questions that you have with regard to the jury instructions or any of the overarching constitutional claims. But I think that those are adequately addressed in the brief. So unless Your Honors have any other questions. I have no questions. Thank you. Thank you. A couple of points. The government just said that the standard is that the interstate wire just has to be incidental to the scheme. And that's not what the Supreme Court has said. It has to be incidental to an essential part of the scheme. And the reason why, whether this was numerous checks, whether it was 14 checks or two checks or 100 checks or five checks, the reason why none of that matters in this case and why this wasn't incidental to an essential part of the scheme is that if any check bounced, nothing different would have happened. And the question is whether the interbank clearing process had anything to do with this fraudulent scheme. And it had nothing. If for some reason something got held up in the interbank collection process when he deposited, when Mr. Ginian deposited a check and it didn't go through, he would have gone back to Leon Brown who would have written him another check. The question is would this scheme have unraveled? That's what happened in Schmuck. Would this scheme have unraveled without the interstate wire? And the answer here is no. The government has never, they didn't allege it in the indictment. They offered no evidence at trial. They didn't, they've offered nothing to show that this scheme would have abruptly halted had there been some problem in the interbank collection process. So this idea that Schmuck is, well, as long as it's ongoing, a point that was specifically rejected in Kahn, and I read that paragraph to you, Schmuck is not, the purpose of Schmuck is not that it was an ongoing scheme. The purpose is that if those mailings did not occur, the scheme would have unraveled. It would have abruptly halted. Here, if there was a problem in the interbank collection process, nothing would have happened. Another check would have been written to Mr. Ginian and the scheme would have gone on. Thank you. Thank you very much. I want to say, if we tell the students to say hello, we'll meet with them. Okay. And then we'll. Okay. That concludes our docket today. We have some law clerks, I mean, sorry, law students here, I believe. We're going to conference, we'll come back out after we conference to talk to you. I think both our law clerks are around, so if you want to ask them questions while we conference, I'm sure they'd be happy to entertain any questions that you might have. Otherwise, thank you both for your arguments and presentations, very excellent arguments today. Thank you very much. We'll be in recess.
judges: Fletcher, Nelson, Murguia